IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORMA MIMS, derivatively on behalf of THE ALLSTATE CORPORATION, ) ) ) | |
| Plaintiff, ) ) | Case No. 20 C 1038 |
| v. ) ) ) | Judge Robert W. Gettleman |
| THOMAS J. WILSON, ANDREA REDMOND, JUDITH A. SPRIESER, KERMIT R. CRAWFORD, SIDDHARTH N. MEHTA, JOHN W. ROWE, MARY ALICE TAYLOR, JACK M. GREENBERG, ROBERT D. BEYER, HERBERT L. HENKEL, STEVEN E. SHEBIK, MATTHEW E. WINTER, and THE ALLSTATE CORPORATION, ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Norma Mims brings a two count shareholder derivative action against The Allstate Corporation ("Allstate"), Thomas J. Wilson, Andrea Redmond, Judith A. Sprieser, Kermit R. Crawford, Siddharth N. Mehta, John W. Rowe, Mary Alice Taylor, Jack M. Greenberg, Robert D. Breyer, Herbert L. Henkel, Steven E. Shebik, and Matthew E. Winter. Allstate has moved to dismiss the complaint pursuant to Rule 12(b)(6) and Rule 23.1 of the Federal Rules of Civil Procedure. (Doc. 33). The individual defendants joined Allstate's motion to dismiss. (Doc. 36). For the reasons stated below, the motions are granted.

**BACKGROUND**

Allstate is a Delaware corporation that offers homeowners, renters, motorcycle, and automobile insurance. Plaintiff is an Allstate stockholder. Plaintiff alleges that, between October 2014 and August 2015, Allstate experienced an increase in auto insurance claim frequency.

1

Allstate's management, including Wilson, Winter, and Shebik, publicly stated that, based on Allstate's internal analyses, this increase was caused by factors external to Allstate such as miles driven, the economy, and the weather. Plaintiff contends that these statements were false, and that Allstate attempted to conceal the increase in auto claims frequency.[1]

On September 12, 2018, plaintiff mailed a demand to Wilson as Chairman of Allstate's Board. Plaintiff demanded that the Board conduct "an independent internal investigation into Management's violations of Delaware and/or federal law" and "commence a civil action against each member of Management" to recover damages for the alleged breach of fiduciary duties. Plaintiff attached the demand letter as an exhibit to her complaint, along with the return receipt which stated that the letter had been delivered to an "agent."

In its response brief, Allstate claims that it never received the letter due to an administrative error by an employee. Allstate further claims that it did not receive plaintiff's demand until shortly after February 12, 2020, when plaintiff filed the instant suit and attached the demand letter to the complaint. Allstate faults plaintiff for failing to follow up, send additional letters, or use the email address for Board communications listed on Allstate's website. Plaintiff appears to concede that she took no other action to follow up with the Board or Allstate's counsel. Between September 12, 2018 and filing suit on February 12, 2020, plaintiff only sent the single demand letter.

Allstate's motion states that shortly after plaintiff filed suit, the Board appointed a Special Committee to investigate and make recommendations with respect to plaintiff's demand.[2] The

---

[1] These allegedly false statements are the subject of related case In re Allstate Corporation Securities Litigation, Case No. 16 C 10510. In both cases, the plaintiffs allege that Allstate's adoption of lax underwriting standards, and not factors such as the economy or the weather, caused the increase in auto claim frequency.

[2] Allstate incorporates correspondence between the Board, its Special Committee, and Plaintiff in support of these factual assertions. Courts may take judicial notice of correspondence related to a stockholder's demand, including the fact that the demand was investigated, when there is no dispute that the correspondence is a copy of what was sent to the plaintiff and when it bears directly on a plaintiff's claim that the demand was tacitly refused. See, e.g., Mills v.

2

Special Committee was comprised of three directors who were not on the Board at the time of the alleged wrongdoing and who are not named as defendants. The Special Committee retained Sidley Austin LLP ("Sidley Austin") as independent counsel for its investigation. According to Allstate, Sidley Austin conducted a comprehensive investigation. The attached correspondence indicates that Sidley Austin invited plaintiff, as well as other stockholders who had filed derivative actions, to provide additional information relevant to the investigation. Plaintiff did not respond to this invitation.

On July 17, 2020, the Special Committee recommended that the Board reject the demand. The Board accepted the Special Committee's recommendation and adopted resolutions rejecting the demand and determining, on the basis of the investigation, that pursuing the claims described in the demand would not be in Allstate's best interests. The resolutions directed Allstate to oppose any efforts to pursue the claims sought in the demand.

On July 20, 2020, Sidley Austin advised plaintiff of the Board's decision and offered to provide her with the resolutions upon execution of a confidentiality agreement. Plaintiff acknowledged receipt of the email but provided no substantive response. Allstate filed a status report with the court on July 29, 2020, explaining many of these facts, including that: (1) the Board did not receive the demand in September 2018 due to an administrative error; (2) once the Board did receive the demand, it appointed a Special Committee, which retained counsel to

---

Esmark, Inc., 91 F.R.D. 70, 71-72 (N.D. Ill. 1981); Bravetti v. Liu, 2015 WL 1954466, at *6 n.4 (D.N.J. Apr. 29, 2015) (rejecting argument that demand was tacitly refused: "Courts, however, have considered correspondence related to a [stock]holder's demand on a motion to dismiss even if it is not referred to in the complaint."); Sprando ex rel. Intern. Game Technology v. Hart, 2011 WL 3055242, at *4 (D. Nev. July 22, 20211) aff'd sub nom. Sprando v. Hart, 527 F.App'x 646 (9th Cir. 2013) (taking notice of correspondence where plaintiff "does not claim that correspondence [supplied] is false or incomplete. Nor does the correspondence contradict any factually supported allegations in the complaint, although it is at odds with Plaintiff's conclusory statement that the Board 'failed to take any meaningful action'"). Plaintiff does not contest the validity of the attached correspondence. Consequently, the court thus takes judicial notice of the correspondence attached to Allstate's briefing to the extent relevant to plaintiff's demand and the Board's subsequent investigation.

evaluate the demand, undertake an investigation, and make a recommendation to the board as to any additional actions to be taken; (3) on July 17, 2020, the Board rejected the demand; (4) the Special Committee informed plaintiff of its decision and offered her the resolutions rejecting the demand; and (5) plaintiff acknowledged receipt of the offer but provided no further response. Three weeks later, the Special Committee again offered to provide plaintiff with the Board's resolution. Plaintiff responded that she would "stand on [her] complaint."

Finally, on August 21, 2020, the Special Committee sent plaintiff a letter detailing the process and conclusion of the investigation, and encouraged plaintiff to reconsider her decision to stand on the complaint. Plaintiff did not respond. Allstate now moves to dismiss the complaint.

## DISCUSSION

As the Seventh Circuit has noted, "derivative suits represent an anomaly of corporate governance. 'Only when the corporation's board defaults in its duty to protect the interest of the investors' may a plaintiff pursue a derivative suit.'" Dorvit on behalf of Power Solutions International, Inc. v. Winemaster, 950 F.3d 984, 988 (7th Cir. 2020) (citing Felzen v. Andreas, 134 F.3d 873, 875 (7th Cir. 1998)). "For this reason, the Federal Rules of Civil Procedure place a special pleading requirement on would-be derivative plaintiffs." Id. Under Rule 23.1(b)(3), plaintiffs are required to plead with particularity "any effort by the plaintiff to obtain the desired action from the directors" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). Pleading both the demand and the corporation's refusal to comply are necessary preconditions to bringing a shareholder derivative action. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 96 (1991); see also Bravetti v. Liu, 2015 WL 1954466, at *2 (D.N.J. Apr. 29, 2015).

4

Though federal law determines whether a plaintiff has stated the facts with sufficient detail, state law determines whether a plaintiff's stated reasons are sufficient as a matter of substantive law. Lowinger v. Oberhelman, 924 F.3d 360, 366 (7th Cir. 2019). Federal courts are accordingly required to apply state substantive law to determine whether the alleged facts demonstrate demand and refusal. Both parties appear to agree that Illinois' choice of law rules direct the court to the law of Delaware, Allstate's state of incorporation. Id. (citing CDX Liquidating Trust v. Venrock Assocs., 640 F.3d 209, 212 (7th Cir. 2011)).

Under Delaware law, when a plaintiff makes a litigation demand on the board, she effectively concedes that the board is independent and able to respond. Id. The board's decision to refuse that demand is thus protected by the business judgment rule. Spiegel v. Buntrock, 571 A.2d 767, 775-76 (Del. 1990). "The business judgment rule is a presumption that in making a business decision…the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." Id. The only way a shareholder plaintiff can overcome the business judgment rule's presumption "is to allege particularized facts that create reasonable doubt about 'the good faith and reasonableness of [the board's] investigation.'" Lowinger, 924 F.3d at 366 (citing Spiegel, 571 A.2d at 775-76). Under Delaware law, a plaintiff must allege with particularity facts suggesting that the Board's decision was irrational or the result of a grossly negligent process. Id.

Defendants argue that the complaint should be dismissed because plaintiff failed to plead the demand requirement under Rule 23.1 and Delaware's corporate law. Specifically, defendants assert that under Delaware law this requirement is met only when, after the demand is made, the Board wrongfully refuses the demand. According to defendants, they never refused plaintiff's demand, let alone wrongly refused it, because they never received it.

Under Delaware law, "once a demand is made, absent a wrongful refusal, the stockholder's ability to initiate a derivative suit is terminated." Spiegel, 571 A.2d at 775. Plaintiff argues that the seventeen-month delay between her demand and the initiation of this lawsuit constitutes wrongful refusal. However, "[u]nder Delaware law, there is no precise rule governing how much time must elapse following a demand on a corporation before plaintiffs may file suit." Bravetti, 2015 WL 1954466, at *5; see also Allison v. Gen. Motors Corp., 604 F.Supp. 1006, 1117-18 (D.Del. 1985). Instead, Delaware courts have held that the adequacy of a demand is "tied to its purpose," Allison, 604 F.Supp. at 1117, and the purpose of the demand requirement is "to assure that the stockholder affords the corporation the opportunity to address an alleged wrong without litigation, to decided whether to invest the resources of the corporation in litigation, and to control any litigation which does occur." Spiegel, 571 A.2d at 773. Given this purpose, courts have repeatedly recognized that the demand "must be more than pro forma; the plaintiff must make a serious request[,]…he must make an earnest, not a simulated effort…to induce remedial action on [the corporation's] part." Smachlo v. Birkelo, 576 F.Supp. 1439, 1443-44 (D.Del. 1983) (citing Hawes v. Oakland, 104 U.S. 450, 460-61 (1882)); see also Mills v. Esmark, Inc., 91 F.R.D. 70, 72 (N.D. Ill. 1981) (citing Hawes for the proposition that a derivative plaintiff "should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself of the redress of his grievances" before filing a derivative suit).

Here, plaintiff alleges that the Board's seventeen-month delay indicates the Board wrongfully refused the demand. The complaint states, "[t]he Board's complete disregard of the Demand, which resulted in its functional refusal, is improper and demonstrates the Board's lack of diligence and good faith." Yet all the complaint alleges is that plaintiff sent a single letter,

6

which was delivered to "agent," and that no investigation ensued. The complaint does indicate, however, that plaintiff was fully aware of the related securities fraud class action, Case No. 16 C 10510, filed in this court.

The complaint's allegations reflect that plaintiff took no steps to confirm receipt of the demand letter to the Board or the status of any investigation before filing suit. Instead, plaintiff "chose not to take any steps to determine the status of [the Board's] investigation and failed to exhaust all means to obtain resolution of [her] grievances before filing suit derivatively on behalf of [Allstate]." Bravetti, 2015 WL 1954466, at *5. Plaintiff's demand is thus inadequate under Delaware law because it ignored the demand requirement's purpose. Indeed, in Bravetti, the court dismissed the case, holding that the derivative plaintiff's demand was inadequate because the plaintiff sent only a single letter to the company's agent, failed to confirm receipt of the letter, and took no steps to determine the status of the investigation before filing suit.[3] See also, Renfro v. Fed. Deposit Ins. Corp., 773 F.2d 657, 658 (5th Cir. 1985) (holding demand was inadequate as a matter of law where plaintiff knew of defendant's investigation and did not take any steps to determine the status of the investigation or of defendant's refusal of the demand prior to filing suit); Equitec-Cole Roesler LLC v. McClanahan, 251 F.Supp.2d 1347, 1352 (S.D. Tex. 2003) (holding demand requirement not met where plaintiff filed suit without a response from single demand because plaintiff did not "exhaust all the means within its reach to obtain, within the corporation itself, a redress of its grievances").

---

[3] Plaintiff claims Bravetti is inapposite because it applied Nevada Law, not Delaware law. Plaintiff is incorrect. Although the company was organized under the laws of Nevada, the court in Bravetti explained that Nevada "has not defined the substantive requirements for" alleging the demand was wrongfully refused and "look[ed] to Delaware" for guidance. 2015 WL 1954466, at *5. The Bravetti court then recited Delaware law and cited Delaware cases. Bravetti is thus relevant to this court's analysis.

Based on plaintiff's minimal demand-related efforts, the court cannot find on the facts alleged that Allstate was unwilling to undertake this action. It is further clear from the complaint that plaintiff did not exhaust any means within Allstate to redress her grievances. The court "find[s] it hard to avoid the conclusion that from the outset plaintiff [was] resolved upon making a trip to the briar patch and sought only an excuse to be thrown in." Renfro, 773 F.2d at 660. As such, the board's action cannot be characterized as a wrongful refusal. Having failed to adequately plead demand and refusal, as required by Rule 23.1 and Delaware law, defendants' motion to dismiss is granted with prejudice. Based on plaintiff's submissions in opposition to the motion to dismiss, the court concludes that plaintiff would be unable to allege facts that would support such a claim.[4]

Additionally, dismissal with prejudice is appropriate in this case for other reasons. The underlying facts have changed significantly since plaintiff filed the complaint on February 12, 2020. On February 20, 2020, a mere seven days after plaintiff filed her complaint, the Board appointed a Special Committee comprised of independent directors to investigate the demand's allegations. As described above, the Special Committee retained independent counsel and conducted a thorough investigation, including inviting plaintiff and other putative derivative plaintiffs to provide more information (which they declined). The Special Committee ultimately

---

[4] Even if plaintiff could sufficiently plead that the Board received the demand, plaintiff has still failed to plead refusal. The complaint merely alleges that the Board's inaction for seventeen months indicates the Board's "functional refusal" of plaintiff's demand. However, courts have held that a length of time between a demand and board action is rarely sufficient to plead refusal. See, for example, In re Smith & Wesson Holding Corp. Derivative Lit., 743 F.Supp.2d 14, 21 (D.Mass. 2010) (dismissing derivative suit for failing to plead refusal where the plaintiff alleged that the board took no action for over a year following the plaintiff's demand); Sprando, 2011 WL 3055242, at *4 (dismissing derivative suit for failing to plead refusal where the plaintiff merely alleged that the board took no action for six months following the demand); Recchion v. Kirby, 637 F.Supp. 284, 288-89 (W.D.Pa. 1985) (dismissing derivative suit where plaintiff issued a demand and filed suit two months later, without waiting for any board action).

recommended that the Board reject the demand. Given these facts, any amendment to the complaint would be futile.[5]

It is clear to the court that the Special Committee's investigation and Board's actions more than satisfied the requirements of procedural due care and good faith. Plaintiff is unable to "allege with particularity facts suggesting that the Board's decision was irrational or the result of a grossly negligent process," Lowinger, 924 F.3d at 367. Plaintiff is additionally unable to allege that the Board failed to properly exercise its business judgment. Consequently, for this additional reason, plaintiff's complaint is dismissed with prejudice.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted. Plaintiff's complaint is dismissed with prejudice.

Date: December 8, 2020

Robert W. Gettleman
United States District Judge

---

[5] As noted in fn. 2 supra, courts may consider correspondence regarding a board's investigation on a motion to dismiss a derivative action.